UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,   ) <br>   ) <br> Plaintiff,   ) <br>   ) <br> v.   ) <br>   ) <br> PRESSTEK, INC. AND   ) <br> EDWARD J. MARINO,   ) <br>   ) <br> Defendants.   ) <br>   ) | Civil Action No. <br><br> JURY TRIAL <br> DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as following against defendants Presstek, Inc. ("Presstek") and Edward J. Marino ("Marino"):

## SUMMARY

1.      On Thursday, September 28, 2006, Marino, the former President and chief executive officer ("CEO") of Presstek, aided and abetted Presstek's violation of Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Regulation FD. While acting on behalf of Presstek, Marino selectively disclosed negative material nonpublic information regarding Presstek's financial performance during the third quarter of 2006 to Michael J. Barone ("Barone"), managing partner of Sidus Investment Management, LLC ("Sidus"), an investment adviser then registered with the Commission.  Within minutes after receiving the information from Marino, Barone

decided to sell all of the shares of Presstek held by the investment funds advised by

Sidus.  On September 29, 2006, Presstek issued a preliminary announcement reporting

that its financial performance was below its prior estimates for the third quarter of 2006.

## JURISDICTION AND VENUE

2.    The Commission seeks permanent injunctions as to the Defendants

pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].  The

Commission also seeks the imposition of civil monetary penalties as to the Defendants

pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

3.    The court has jurisdiction over this action pursuant to Section 21(d), 21(e)

and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa].

4.    In connection with the conduct described in this Complaint, Defendants

directly or indirectly made use of the mails or the means or instruments of transportation

or communication in interstate commerce in connection with the acts, practices and

courses of business alleged in the Complaint.

## RELATED PARTY

5.    Barone, 45, is a resident of Providence, Rhode Island.  Barone is one of

the managing partners of Sidus, an investment adviser registered with the Commission

from January 2000 through March 2009.   In September 2006, the Sidus-managed

investment funds collectively held almost half a million shares of Presstek

## DEFENDANTS

6.    Defendant Presstek is a Delaware corporation headquartered in

Greenwich, Connecticut.  Presstek is in the business of designing, manufacturing, selling

and servicing high-technology digital imaging equipment to the worldwide graphic arts

2

industry.  Presstek's stock is registered with the Commission pursuant to Section 12(g) of

the Exchange Act and trades on the NASDAQ National Market System.  Presstek's fiscal

year ends on December 31, and the quarter ending September 30 is its fiscal third quarter.

      7.      Defendant Marino, 58, is a resident of Boston, Massachusetts.  Marino

became a member of Presstek's Board of Directors in 1999 and served as Chairman of

Presstek's Audit Committee until he stepped down in April 2002 to become its president

and CEO.  Marino was terminated by Presstek in May 2007.


## FACTS

### A.    Background

      8.      In 1999, Marino became a member of Presstek's Board of Directors and

served as chairman of Presstek's Audit Committee.  In April 2002, Marino ceased being a

director and became the president and CEO of Presstek.

      9.      In 2006, Marino was one of three persons authorized by Presstek to speak

on its behalf to investors, analysts, and other securities professionals, along with the chief

financial officer and the director of investor relations.

      10.     By at least 2006, Marino was aware of Presstek's internal policy

concerning periods of "corporate silence" generally starting on the 15th day of the last

month of a quarter, whereby he could discuss with outside parties only information that

was already publicly known.  At that time, Marino was also aware that Exchange Act

Regulation FD [17 C.F.R. §§ 243.100 *et seq.*] prohibited him from selectively disclosing

material nonpublic information to one party that was not publicly disclosed to all.

11.     In September 2006, Marino was aware that Sidus was an institutional investor with holdings of Presstek stock

**B.     Marino Believes Presstek will Miss its Third Quarter 2006 Forecast**

12.     On September 10, 2006, Presstek's controller sent an e-mail to Marino advising him that "[w]eak August performance in both North America and Europe has negatively impacted [Presstek's] margin and operating income relative to plan."

13.     On September 18, 2006, Marino sent an e-mail to certain Presstek senior personnel stating that "[t]he reality is that our forecast for the quarter has dropped precipitously as we approach quarter end."

14.     Presstek planned to issue a preliminary announcement in early October 2006 to report its poor financial performance for the third quarter of 2006 (the quarter ended September 30, 2006). As of September 28, 2009, Presstek had not issued any announcement regarding its third quarter financial performance. Thus, the information about Presstek's poor financial performance in the third quarter of 2006 was still nonpublic as of September 28, 2006.

**C.     Marino Selectively Discloses Information to Barone**

15.     On September 28, 2006, at or about 10:39 a.m., Barone called Presstek and spoke with Marino by telephone, as reflected in telephone records and a text message Barone sent to a business associate indicating that he was "on with ed marino."

16.     In the conversation between Marino and Barone, Barone asked Marino about Presstek's performance in Europe during the summer of 2006. Barone took handwritten notes of Marino's reply.

4

17.     Barone's notes indicate that Marino replied that "[s]ummer [was] not as vibrant as [they] expected in North America and Europe." Barone's notes also indicate that Marino summarized the situation as while "Europe [had] gotten better since [the summer]" it was "overall a mixed picture [for Presstek's performance that quarter]."

18.     At or about 10:42 a.m., while on the telephone with Marino, Barone sent another text message to his business associate indicating that the information he was receiving from Marino "sounds like a disaster."

19.     The business associate then asked Barone by text message whether he should buy puts and Barone responded affirmatively.

20.     At or about 10:50 a.m. on September 28, 2006, the telephone call ended between Marino and Barone.

21.     At or about 10:52 a.m., Sidus began placing sell orders for Presstek shares.

22.     At or about 10:53 a.m., Barone sent a text message to Sidus' trader directing him to "sell all prst." "PRST" is the trading symbol for Presstek.

23.     During the day, Sidus sold substantially all (391,766 shares) of its holding of Presstek shares.  Coinciding with Sidus' sell orders, Presstek's stock price dropped $1.47 (or 19%) to close at $6.23 per share.

24.     Marino was acting on behalf of Presstek when he revealed the negative material nonpublic information to Barone, and he disclosed the information to Barone under circumstances in which it was reasonably foreseeable that Barone would sell (and did sell) Presstek's securities on the basis of the information .

25.     Presstek did not simultaneously disclose to the public the information provided to the investor during the telephone call between Marino and Barone.

**D.**     **Presstek's Subsequent Public Disclosure of the Information**

26.     On September 29, 2006 (the day after Marino selectively disclosed material nonpublic information to Barone), at or about 12:01 a.m., Presstek issued a preliminary announcement reporting that its financial performance was below its prior estimates for the third quarter of 2006.

27.     On September 27, 2006 (the day before Marino's selective disclosure), Presstek's stock closed at $7.70 per share.  On the day of Marino's selective disclosure (September 28, 2006), Presstek's stock price closed at $6.23 per share (a drop of $1.47 per share, or 19%, from the prior day's close).  On September 29, 2006 (the day Presstek publicly disclosed information about its third quarter 2006 financial performance), Presstek's stock price opened at $4.95 per share (a drop of $1.28 per share, or 20%, from the prior day's closing price) and went as low as $4.83 per share before closing at $5.39 per share (a drop of $0.64, or 10%, from the prior day's closing price).

**E.**     **Presstek's Subsequent Remedial Measures**

28.     Presstek has since taken certain remedial measures, including revising its corporate communications policies and corporate governance principles, replacing its management team and appointing new independent board members, and creating a whistleblower's hotline.

## FIRST CLAIM FOR RELIEF

### Violation of Section 13(a) of the Exchange Act and Regulation FD by Presstek

29.     The Commission repeats and realleges paragraphs 1 through 28 above.

30.     By engaging in the conduct above, Presstek violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Regulation FD [17 C.F.R. §§ 243.100 *et seq.*], in

connection with the selective disclosure of material nonpublic information alleged in this

Complaint.

## SECOND CLAIM FOR RELIEF

### Aiding and Abetting Violation of Section 13(a) of the Exchange Act and Regulation FD by Marino

31.     The Commission repeats and realleges paragraphs 1 through 28 above.

32.     Presstek violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)]

and Regulation FD [17 C.F.R. §§ 243.100 *et seq.*], in connection with the selective

disclosure of material nonpublic information alleged in this Complaint.

33.     Marino knew, or was reckless in not knowing that Presstek's conduct was

improper and assisted in the selective disclosure of material nonpublic information

alleged in the complaint.

34.     By the reason of the foregoing, Marion aided and abetted Presstek's

violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Regulation FD

[17 C.F.R. §§ 243.100 *et seq.*] and is therefore liable pursuant to Section 20(e) of the

Exchange Act [15 U.S.C. § 78t(e)].


## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A.     Enter a permanent injunction restraining Defendants Presstek and Marino

and their agents, servants, employees and attorneys and those persons in active concert or

participation with them who receive actual notice of the injunction by personal service or

otherwise, including facsimile transmission or overnight delivery service, from directly or

indirectly engaging in conduct describe above, or in conduct of similar purport and effect,

in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Regulation FD [17 C.F.R. §§ 243.100 *et seq.*];

   B.   Order Defendants Presstek and Marino to pay an appropriate civil monetary penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3);

   C.   Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

   D.   Award such other and further relief as the Court deems just and proper.

                    Respectfully submitted,

                    **SECURITIES AND EXCHANGE COMISSION,**

                    By its attorney,

                    _____
                    Deena R. Bernstein (BBO #558721)
                     Senior Trial Counsel
                     bernsteind@sec.gov
                    Robert Baker (BBO # 654023)
                     Senior Enforcement Counsel
                     BakerR@sec.gov
                    Boston, Massachusetts 02110
                    (617) 573-8813 (Bernstein)
                    (617) 573-4590 (Facsimile)

March 9, 2010